IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **METHODE ELECTRONICS, INC.,** ) | |
| ) | |
| **Plaintiff/Counter-Defendant** ) | |
| ) | |
| v. ) | |
| ) | **No. 09 CV 2191** |
| **DELPHI AUTOMOTIVE SYSTEMS LLC,** ) | |
| ) | **HONORABLE DAVID H. COAR** |
| **Defendant/Counter-Plaintiff,** ) | |
| ) | |
| **MARIAN, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| **DELPHI TECHNOLOGIES, INC.,** ) | |
| ) | |
| **Counter-Claimant.** ) | |

### CORRECTED MEMORANDUM OPINION AND ORDER[1]

This case concerns Plaintiff Methode Electronic Inc.'s ("Methode") claimed patent for a weight-sensing pad, which is a critical component of a seat-occupant sensing technology sold by Defendant Delphi Automotive Systems LLC ("Delphi") and used in car airbag systems. Before the court is Delphi's motion to transfer this case to the United States District Court for the Eastern District of Michigan. *See* 28 U.S.C. § 1404(a). For the following reasons, the motion is GRANTED.

---

[1] A version of this opinion initially was released on July 13, 2009. As a result of clerical error, that version did not include section III-3. The court issues this opinion solely to correct that omission.

-1-

## I. BACKGROUND

The crux of Methode's complaint is that, after years of purchasing weight-sensing pads exclusively from Methode, Delphi has found a new supplier in Defendant Marian, Inc., and in doing so both Delphi and Marian have violated Methode's patent for the pads. Methode is a Delaware corporation with its principal place of business in Chicago, Illinois; Delphi is a limited liability Delaware company with its principal place of business in Troy, Michigan; and Marian is an Indiana corporation with its principal place of business in Indianapolis, Indiana.

Methode and Delphi (and their predecessors) have had a long relationship. According to Methode's complaint, in 1997, Delphi's predecessor, Delco Electronics Corporation ("Delco"), approached Methode's predecessor, American Components, Inc. ("ACI"), and requested that ACI develop a weight-sensing pad suitable for use in a vehicle restraint system. (Compl. ¶7.) Methode says that ACI engaged Dr. Frank Speckhart, a professor at the University of Tennessee, to work with Scott Baker, Vice President of ACI, on the weight-sensing pad, and together they invented such a pad with hexagonal cells formed by spot welding. (Compl. ¶¶8,9.) As a result, on November 29, 1999, U.S. Patent No. 5,975,568, entitled "Sensor Pad for Controlling Airbag Deployment and Associated Support" ("the Speckhart Patent") was duly and legally issued, according to Methode. (Compl. ¶¶1,23.)

In its counterclaim, Delphi tells a different story: Delphi says that it was Delco employees who invented the pad design (which Delphi refers to as a "bladder") that is the subject of Methode's patent-in suit. (Counterclaim ¶10.) Delphi argues that, when their relationship began, Delco and ACI entered into a Non-Disclosure/Confidentiality Agreement, whereby Delco provided significant details of its inventions and development work so that

2:09-cv-13078-PDB-MKM   Doc # 2   Filed 08/05/09   Pg 3 of 14   Pg ID 24

Methode could produce manufacturing prototypes and tooling to mass-produce the pads. (Counterclaim ¶11.)  During the course of this development, says Delphi, Duane Fortune, Morgan Murphy, among others at Delphi/Delco—but not Dr. Speckhart, Mr. Baker or anyone else at Methode/ACI—invented a PODS bladder with an array of circular cells formed by a hexagonal geometry.  According to Delphi, its predecessor subsequently shared these concepts and designs with ACI.  (Counterclaim ¶12.)  Delphi notes that Delco filed a patent application on February 18, 1998, based on the bladder concept its employees invented, which led to U.S. Patent No. 6,101,436, a weight-sensing bladder used in Delphi's PODS systems.  (Counterclaim ¶13.)  Delphi claims that this prior art invalidates Methode's subsequently filed patent application.  (Counterclaim ¶14.)

While responsibility for the pads' design is disputed, the companies' supply arrangement is not.  Initially, Delco and ACI entered into a multi-year agreement whereby ACI was Delco's exclusive supplier of the pads.  (Compl. ¶10.)  That relationship continued in 2001, when Methode acquired the Speckhart Patent and other ACI assets related to the pads: the two companies reached a second successive multi-year supply agreement, this time with year-over-year price decreases. (Compl. ¶¶11,12.)  (It's unclear precisely when Delphi succeeded Delco, but it's of no moment for purposes of this motion.)

It's also undisputed that Delphi and Methode's relationship soured in 2008, at the end of the second supply agreement.  The parties still were able to reach and memorialize a new agreement—which Methode refers to as the "2008 supply agreement," without objection from Delphi—that included, significantly, a clause designating federal and state courts of Michigan as the venue for any legal actions arising out of, or in connection with, the contract.  (R.32, MTT

-3-

Ex. 6 at ¶26.1.) But the 2008 supply agreement was not reached without struggle. Methode claims that, based on economic factors, it had to increase the price of the pads, which caused Delphi to threaten to seek a new supplier and to request the tooling drawings for the pads. (Compl. ¶¶14,15.) When Methode refused to provide the drawings (on the ground that Delphi had not promised to respect the Speckhart patent) Delphi sued Methode in Michigan state court to obtain the drawings. (Compl. ¶15.) That action remains pending in the 6th Judicial Circuit of Michigan, Oakland County Circuit Court (captioned *Delphi Automotive Sys., LLC v. Methode Electronics, Inc.*, No. 08-095518-CK).

In the meantime, Methode contends that Delphi has provided specimens and samples of the weight-sensing pads and other technical information to Marian, and that Marian has used this information to manufacture infringing pads for Delphi. (Compl. ¶¶17,18.) Methode also contends that Delphi is currently testing infringing weight-sensing pads manufactured by Marian, and that Marian will continue to manufacture and sell infringing pads to Delphi, who in turn will sell them to its customers. (Compl. ¶21.)

Both defendants have answered the complaint and filed counterclaims. Delphi now moves to transfer the case to the Eastern District of Michigan.

## II. LEGAL STANDARD

For the convenience of parties and witnesses and in the interest of justice, a district court may transfer a case to any other district or division where it might have been brought. 28 U.S.C. § 1404(a). "[A]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Transfer is appropriate if "(1)

venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of parties and witnesses; and (3) transfer is in the interests of justice." *Illinois Blower, Inc. v. Deltak, LLC*, No. 04-0341, 2004 WL 765187, at *3 (N.D. Ill. Apr. 7, 2004) (Coar, J.). It is the movant's burden to show that transfer is appropriate. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).

The propriety of transfer is a case-by-case assessment, and it is committed to the sound discretion of the trial judge. *Id.* at 219. The court considers convenience (or "private interest") factors, including: (1) the plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease and access to sources of proof, (4) the convenience of the parties and (5) the convenience of the witnesses. *Sitrick v. Dreamworks L.L.C.,* No. 02 C 8403, 2003 WL 21147898, at *5 (N.D. Ill. May 14, 2003), *aff'd*, 516 F.3d 993 (Fed. Cir. 2008); *see* 15 C. Wright & A. Miller, Federal Practice §§3849-53 (1986). And the court considers the interests of justice (or "public interest factors"), which "relate to the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in [a particular] locale." *Sitrick*, 2003 WL 21147898, at *5 (quotation marks and citations omitted). "There often may be multiple proper venues, although one, on the basis of a forum-selection clause or for other reasons, may be superior to the rest." *In re LimitNone, LLC*, 551 F.3d 572, 575 (7th Cir. 2008).

### III. ANALYSIS

There is no dispute that both the Northern District of Illinois and the Eastern District of Michigan are proper venues, and so the court focuses on the public and private interest factors highlighted by the parties: (1) the forum-selection clause; (2) the plaintiff's choice of forum; (3)

the location of material events giving rise to the claims; (4) the relative convenience of the two venues for the parties, witnesses, and evidence; (5) the existence of the Michigan state-court action; (6) the relative efficiency of each forum; and (7) the interests of the citizens of Illinois and Michigan in the case. The court considers each factor in turn.

     1. The Forum Selection Clause

A forum selection clause in a contract should be enforced unless it would be unreasonable or unjust under the circumstances. *See Northwestern Nat'l Ins. Co v. Donovan*, 916 F.2d 372, 375-76 (7th Cir. 1990); M*/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). In considering a motion to transfer venue, the presence of a forum selection clause is relevant both as a matter of convenience and as an interest of justice: it is "a significant factor that figures centrally in the district court's calculus." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988). Still, the court's transfer analysis remains "flexible and multifaceted," and a forum-selection clause—like any other relevant factor—"should receive neither dispositive consideration . . . nor no consideration." *Id.* at 31.

Here the forum-selection clause is in paragraph 26 of Methode and Delphi's 2008 supply contract, under the heading "GOVERNING LAW AND JURISDICTION":

> [E]ach party hereby agrees that the forum and venue for any legal or equitable action or proceeding arising out of, or in connection with, this Contract will lie in the appropriate federal or state courts in the State of Michigan and specifically waives any and all objections to such jurisdiction and venue.

(R.32, MTT Ex. 6 at ¶26.1.) Delphi argues that the forum-selection clause is mandatory, valid and enforceable, and that the parties' patent-infringement dispute "arises out of" or is "in connection with" the 2008 supply contract. (Delphi Br. 7-8.) Methode, for its part, does not dispute that the forum-selection provision is mandatory, valid, and enforceable; it responds only

that its patent-infringement claims are unrelated to and do not depend on interpretation of the 2008 supply contract. (Methode Br. 3-4.) And Methode notes that Marian—which has not participated in the briefing of the motion to transfer—is not a party to the 2008 supply contract.

The Seventh Circuit has explained that a clause designating a forum for all disputes "arising out of" a contract applies to "all disputes the resolution of which arguably depend on the construction of [the] agreement." *Omron Healthcare, Inc. v. Maclaren Exps. Ltd.*, 28 F.3d 600, 603 (7th Cir. 1994). And the court has described a forum-selection clause applying to disputes "arising from, concerning or in any way related to" a contract as "about as broadly worded as could be imagined." *Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 424 (7th Cir. 2007). But it has cautioned that even a broadly worded clause "doesn't justify a literal interpretation that carries far beyond any purpose that can reasonably be imputed to the drafter." *Id.* at 426.

Here, the court concludes that the forum-selection clause applies to Methode's patent-infringement claim against Delphi. Leaving aside whether resolving the patent dispute could depend on construction of the 2008 supply contract, Methode's patent-infringement claim is at least "in connection with" that contract. In using the words "in connection with," much like the parties in *Abbott* who used the words "concerning or in any way related to," Delphi and Methode intended that the forum-selection clause apply to a broader array of claims than just those requiring interpretation of the 2008 supply contract. *Cf. Abbott Labs.*, 476 F.3d at 424; *see also John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074-75 (3d Cir. 1997) (holding that "arising in relation to" language in forum-selection clause is broader than "arising under" language); *Ward Enters., Inc. v. Bang & Olufsen Am.*, No. 02-7640, 2004 WL 830461, at *2 (N.D. Ill. April 15, 2004) (endorsing view that use of "relating to" language in addition to

"arising from" language broadens scope of forum-selection clause).  From this broad language, it's reasonable to infer their intent that the clause apply to a patent dispute regarding the very weight-sensing pads that Methode supplied to Delphi under the contract—particularly a legal action, as here, that concerns Delphi's right to pursue an alternative supplier of the pads.  Indeed, the nature of their relationship, as contemplated in the 2008 supply contract, may bear in part on the existence and scope of Methode's or Delphi's license to use the other's patented design.  And while the contract may not address explicitly propriety rights to the design of the weight-sensing pads, it is still the most recent incarnation of a long-standing relationship that grew out of, and is therefore connected with, the design and manufacture of those pads.  Accordingly, the court concludes that the forum-selection clause applies.[2]

Meanwhile, Marian's non-participation in the 2008 supply contract does not render unreasonable or unjust this court's enforcement of the forum-selection clause.  Presumably Marian, an Indiana corporation with its principal place of business in Indianapolis, would prefer to litigate in Indiana; but the company has neither participated in the briefing of this motion nor otherwise expressed a preference for any forum.  Accordingly, Delphi and Methode's selection of Michigan as the appropriate forum for their disputes weighs heavily in favor of transfer.  *See Illinois Blower, Inc. v. Deltak, L.L.C.*, No. 04 C 0341, 2004 WL 765187, at *4 (N.D. Ill. Apr. 7, 2004).

---

[2] Alternatively, even if Delphi and Methode reached no agreement about the proper forum for patent-infringement disputes, the forum-selection clause in their 2008 supply contract shows, at the very least, a recent agreement that the Eastern District of Michigan is a convenient forum for *some* disputes.  That fact undermines many of Methode's contentions of inconvenience. *See Trio Video, LLC v. NTL Capital, LLC*, No. 07 C 2719, 2007 WL 2230036, at *3 (N.D. Ill. July 27, 2007) (noting that forum-selection clauses indicate "that the parties have agreed to the most convenient forum.").

### 2. The Plaintiff's Chosen Forum

Methode contends that, because it brought suit in its home district, where its corporate headquarters are located, its choice deserves significant deference. (Methode Br. 6-7.) Delphi responds that the court should not assign substantial weight to this fact because of the forum-selection clause. Delphi notes that Methode has offices both in Michigan and Illinois and that any alleged infringing activities took place outside of Illinois. (Delphi Br. 12-13.)

"[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus.*, 347 F.3d 662, 664 (7th Cir. 2003) (quotation marks and citations omitted). But the balance may strongly favor the defendant, as courts have found, where an applicable forum-selection clause points to another forum, or where the material events from which the dispute arose are outside of the plaintiff's chosen forum. *See Illinois Blower*, 2004 WL 765187, at *4; *Sitrick v. Dreamworks L.L.C.,* No. 02 C 8403, 2003 WL 21147898, at *3 (N.D. Ill. May 14, 2003); *Cooper Bauch Corp. v. Doly Labs., Inc.*, No. 05 C 7063, 2006 WL 1735282, at *4 (N.D. Ill. June 19, 2006).

Here, both the existence of the forum-selection clause and the fact that the material events are alleged to have occurred outside of Illinois diminish the significance of Methode's choice. Indeed, beyond noting that Illinois is its "home turf," Methode has not suggested *any* relationship between its patent-infringement claims and Illinois; it argues that the material events predominantly occurred in Tennesee and Indiana, not here. Given this relatively weak connection to Illinois, and because this district is not the parties' agreed venue, the court will give little weight to Methode's election to initiate suit here.

3.  The Location of Material Events

Patent-infringement suits typically revolve around the alleged infringer's activities, employees, and documents.  *Berol Corp. v. BIC Corp.*, No. 02 C 0559, 2002 U.S. Dist. LEXIS 12932, at *14-16 (N.D. Ill. July 8, 2002).  And as Delphi, an alleged infringer, notes, its headquarters and technical center are in the Eastern District of Michigan, and the testing, marketing, sales, and some design and development of the pads occur there.  (Delphi Br. 14.)  Methode, for its part, does not dispute that those activities occur in part in the Eastern District of Michigan, but it notes that some of Delphi's infringement activities are occurring in Kokomo, Indiana, and that Marian's alleged patent-infringement and manufacture of materials are occurring in Indianapolis, Indiana.  (Methode Br. 8.)  Methode also notes that development of the pad technology claimed in the Speckhart Patent occurred predominantly in Knoxville and Dandridge, Tennessee.  (Methode Br. 8-9.)

Although it appears that most of the material events related to the patent claims took place, or will take place, in Indiana—i.e., outside, and geographically sandwiched between, this district and the proposed transferee district—it's undisputed that *none* of the material events occurred in Illinois, and Methode acknowledges that some material events occurred in Michigan.  Accordingly, although this factor does not strongly favor either forum, it slightly favors transfer to Michigan.

4. The Relative Convenience For Parties, Witnesses, and Evidence

Given its agreement to litigate disputes with Delphi in Michigan, Methode faces an uphill battle in showing that transfer there would be inconvenient.  *See Wilkinson Co. v. Krups N. Am., Inc.*, 48 F. Supp. 2d 816, 818 (N.D. Ill. 1999) ("[Plaintiff] . . . has waived its own right to a

convenient forum by freely entering into the Agreement containing the forum-selection clause."). Moreover, Delphi and Methode's pending litigation in Michigan state court lessens the inconvenience of an additional suit there.  *See Safety-Kleen Corp. v. Davis*, 1998 WL 748269, at *3 (N.D. Ill. Oct. 22, 1998).  And because "ease of access to source of proof . . . is not typically of much importance in patent infringement cases," the court gives little weight to the location of evidence (which is spread across Indiana, Michigan, Illinois, and Tennesee).  *Abbott Labs. v. Church & Dwight, Inc.*, No. 07 C 3428, 2007 WL 3120007, at *4 (N.D. Ill. Oct. 23, 2007).  "No matter where the trial is held, all relevant documents—regarding both the patented invention and the allegedly infringing technology—will have to be collected, copied, and sent to the offices of [] counsel."  *Id.* (quoting *CoolSavings.Com, Inc. v. IQ. Commerce Corp.*, 53 F.Supp.2d 1000, 1006 (N.D. Ill. 1999)).

In any event, the inconvenience cited by Methode—additional travel time for its Illinois employees—would just as easily burden Delphi's Michigan employees travelling to Illinois. Although in other circumstances this draw would disfavor transfer, *see In re Nat'l Presto Indus.*, 347 F.3d at 665, given the fact that Methode conducts much of its day-to-day business dealings with Delphi in Michigan, is already involved in ongoing litigation within the Eastern District of Michigan, and has already waived objections—through the 2008 supply agreement—to settling disputes in Michigan, the relative convenience of Michigan favors transfer.

  5.  The Pending Michigan State-Court Action

As noted above, the pending Michigan state-court action favors transfer as a matter of convenience.  Delphi also argues that it favors transfer as a matter of judicial economy because that case involves closely-related issues—in particular, those related to the existence of a license

for the patented designs. (Delphi Br. 10.) The court agrees that this factor favors transfer. Although Methode disputes the notion that the legal issues will overlap, it's uncontested that "having the actions litigated in the same geographical area would still facilitate the coordination of pretrial discovery, and save time and energies of witnesses, the parties, and the attorneys." *Bombardier Capital Inc. v. Solomon*, No. 00 Civ. 0848(RMB), 2000 WL 1721138, at *6 (S.D.N.Y. Nov. 17, 2000) (citation and quotation marks omitted).

      6. The Relative Efficiency of Trial

Delphi argues that proceeding in the Eastern District of Michigan would be more efficient because (1) if the dispute demands interpretation of a supply contract governed by Michigan law, with which that court is more familiar, and (2) based on a 2008 study of the median time-to-trial for patent cases, in the Eastern District of Michigan it is 2.03 years, whereas in this district it is 3.42 years. (R. 32, Ex. 4, PriceWaterHouseCoopers' 2008 Patent Litigation Study at 12). (Delphi Br. 11-12.) Methode responds that this patent infringement suit involves purely federal questions, and that the interpretation of contracts will not be necessary. Methode also notes that time-to-trial assessments are highly speculative, and that the cited study analyzed data from 2007. (Methode Br. 13-14.)

The court agrees with Delphi that the potential for interpretation of Michigan law favors transfer. Although it's possible that a court could resolve this case without reference to the parties' contract, Methode does not dispute it is governed by the law of Michigan, and that the Eastern District of Michigan has more familiarity with that body of law. *See Illinois Blower*, 2004 WL 765187, at *4. Meanwhile, the court agrees with Methode that court congestion is a "speculative" factor, and that "case-disposition statistics may not always tell the whole story."

-12-

*See In re Genentech*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).  At the same time, the substantial time difference noted in the study—1.39 years—is hard to ignore completely.  And, other than noting that the study is from 2007, Methode does not contest its methodology or otherwise contend that circumstances have changed.  Given the substantial time difference, it is not an insignificant factor, particularly for a patent case. *See Tissue Extraction Devices, LLC v. Suros Surgical Sys., Inc.*, No. 08-140, 2008 WL 4717158, at *5 (N.D. Ill. May 20, 2008) ("Greater importance is placed on a speedy resolution in patent infringement cases").  Accordingly, this factor slightly favors transfer.

      7.  The Relative Interests of the Citizens of Illinois and Michigan

Finally, Delphi contends that the Eastern District of Michigan has a substantial and meaningful connection to the parties and the subject matter of this dispute, as it is the epicenter of the U.S. automobile industry, of which all parties are a part, and it is where the companies that use the airbag safety products are located.  (Delphi Br. 11.)  Methode responds that it is headquartered in Chicago, a number of its employees who work on the pads reside in or near Carthage, Illinois, and that the citizens of Illinois have a direct interest in protecting a local company's welfare.  (Methode Br. 11-12.)

Although both the citizens of Michigan and Illinois have an interest in protecting local businesses, undeniably Michigan has a broader interest in the welfare of its automobile industry and thus, generally, the resolution of this dispute.  And because sales of products that incorporate the allegedly infringing activity occur in Michigan, this factor favors transfer.  *See Cooper Bauck Corp. v. Dolby Labs., Inc.*, No. 05-7063, 2006 WL 1735282, at *7 (N.D. Ill. June 19, 2006)

    In sum, but for the plaintiff's choice of forum, all of these factors favor transfer: the

parties agreed to litigate disputes in Michigan, and some of the material events occurred there; while each party would be slightly burdened by litigating in the other's home forum, the parties already are litigating in Michigan, patent cases tend to proceed to trial faster in the Eastern District of Michigan and, as the epicenter of the U.S. automobile industry, it has a particular interest in resolving a dispute related to an automobile-safety part. Thus, when considered collectively, these factors clearly show that the Eastern District of Michigan is a superior forum for resolution of this dispute.

## IV. CONCLUSION

For the foregoing reasons, this court GRANTS Delphi's motion to transfer venue. This case is hereby transferred to the United States District Court for the Eastern District of Michigan.

**Enter:**

/s/ David H. Coar

_____

David H. Coar

United States District Judge

Dated: **July 16, 2009**