UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

METHODE ELECTRONICS, INC.
        Plaintiff/Counter-Defendant,
  vs.
DELPHI AUTOMOTIVE SYSTEMS L.L.C.,    Civil Action No. 09-13078
        Defendant/Counter-Plaintiff,

MARIAN, INC.,
        Defendant,                  District Judge Paul D. Borman
                                          Magistrate Judge Virginia M. Morgan

DELPHI TECHNOLOGIES, INC.,
    Counter-Plaintiff.
                      /

## OPINION AND ORDER GRANTING IN PART DELPHI'S MOTION FOR PROTECTIVE ORDER (#31) [EX.A 31-3] AND DENYING METHODE'S MOTION FOR PROTECTIVE ORDER (#30)

This matter is before the court on two motions for Rule 26(c) protective orders (confidentiality orders) in this patent case. While both Methode and the Delphi parties ask that a protective order be entered, they cannot agree on the form of the order or the provisions therein. No oral argument was held on the motion because sufficient discussion on the matter was had at oral argument on discovery motions on October 19, 2009. For the reasons discussed in this opinion, it is ordered that the protective order submitted by Delphi (#31) as modified by the court be entered in this case.[1]

---

[1] As noted by Methode, the caption of Delphi's proposed order must be modified to reflect the proper plaintiff and defendant in the federal case (they are reversed in the state case). Delphi's "errata" sheet is inappropriate to modify the order. A full and complete Protective Order must be submitted which corrects the procedural errors, incorporates the federal rule citations, and incorporates the reciprocal bar and time period must be filed by Delphi within FOURTEEN (14) days of the date of this order.

**Background**

The case involves a dispute regarding patents for bladders in car seats which detect the weight of the passenger. There are referred to PODS (Passive Occupant Detection System) bladders. Delphi holds patent "'436" and Methode holds patent "'568" (which it purchased from another company). Both patents are related to the same technology. Methode claims infringement of its patent; Delphi denies infringement and claims that Methode's patent is invalid. There is a related state court contract action pending (with the parties reversed as plaintiff and defendant) and Judge Grant entered a protective order there. Both parties argue that the "same" order should be adopted here but they have differing ideas of what the "same" protective order would be. Delphi's order upholds the patent prosecution bar against Methode, which is part of the state court order, and prohibits Methode's attorneys who access "Attorneys Eyes Only" (AEO) information in this case [as in the state case] from also prosecuting patents related to bladder based occupant detection systems and related components. Methode's proposed order vaguely describes prohibited activities but does not include any way to protect against inadvertent disclosure or use of the information.

**Issue in Dispute**

The issue is the inclusion of Par. 5 in the Delphi proposed order. The order is from the state case:

> Access to information designated as ATTORNEYS EYES ONLY" shall be limited to and only to those persons listed in paragraphs 4(a) through 4(c) and 4(e) through 4(g), except that no person for the Defendant[2] including attorneys, who participate in, aide in, advise or counsel concerning the preparation, filing and/or prosecution of patent applications in any country, including any interference, reissue, reexamination or other proceeding, relating to occupant sensing technologies and/or the subject matter of U.S. Patents 5,975,568,, 7,237,443, Des 409,935 and/or related patents and patent applications shall

---

[2]It appears that Delphi means Methode.

be permitted access to documents marked "ATTORNEYS EYES ONLY." Further, persons described in paragraph 4(d) shall not be given access to documents marked "ATTORNEYS EYES ONLY."

**Analysis**

Protective orders are controlled by Federal Rule of Civil Procedure Rule 26(c), which provides that for good cause shown, a party may seek an order that limits the scope or dissemination of discoverable information. A court has broad discretion to fashion a protective order, and the general public right of access does not reach pretrial discovery. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36-37 (1984). Rule 26(c)(7) specifically contemplates such protection for confidential commercial information. *See Phillips ex rel. Estates of Byrd v. General Motors Corp.,* 307 F.3d 1206, 1210-11 (9th Cir.2002). A party seeking a protective order has the burden to show good cause. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,* 263 F .3d 1304, 1313-14 (11th Cir.2001); *General Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d 1204, 1212 (8th Cir.1973). To make this showing, the moving party cannot rely on broad or conclusory allegations of harm. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n.16 (1981).

**Protective Orders Against Patent Counsel**

Patent litigation often requires parties to disclose confidential information to one another. Where the parties are competitors in a particular field, there is danger that one party may use such information to the competitive disadvantage of the other. The typical means to mitigate this risk is through a protective order that allows documents to be designated "attorneys eyes only." This designation ensures that only counsel, and no other officers or employees of the party, have access to confidential information. Counsel may thus advance their party's interests without the risk that an adverse party will use confidential information for purposes other than litigation. *See Avocent Redmond Corp. v. Rose Elecs., Inc.,* 242 F.R.D. 574, 575-76 (W.D.Wash.2007); *Glaxo*

*Inc. v. Genpharm Pharms., Inc.,* 796 F.Supp. 872, 874 (E.D.N.C.1992).  This procedure works if litigation counsel consists of an outside law firm, or "external counsel," whose involvement is limited to litigation alone. But where a party employs its own attorneys, or "internal counsel," as litigation counsel–or where outside litigation counsel is also patent counsel–there is a risk that these attorneys may use information acquired in litigation in other areas of their employment. Notwithstanding their best professional efforts, counsel may acquire confidential information in litigation and use it for other matters, to the advantage of their employer and the disadvantage of the opposing party. *See Intel Corp. v. Via Techs., Inc.,* 198 F.R.D. 525, 529-30 (N.D.Cal.2000).

The Federal Circuit considered the appropriate scope of a protective order, in a scenario where internal counsel also served as litigation counsel, in *U.S. Steel Corp. v. United States.* 730 F.2d 1465 (Fed.Cir.1984). The court first observed that, when deciding whether counsel should have access to confidential information, designation as internal or external counsel is immaterial. The court instead took a more factually oriented approach, asking whether counsel is involved in "competitive decision-making" for the party. *Id.* at 1468-69.  The *U.S. Steel* court described involvement in competitive decision-making as "counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and preparation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* at 1468 n. 3. In dictum, the court also suggested a protective order against internal counsel may not be warranted in circumstances that work "extreme and unnecessary hardship" against a party. *Id.* at 1469.  It is well recognized that "[w]here related patents are being prosecuted and litigated simultaneously, a party may obtain strategic advantage by using information from the litigation in the patent prosecution." *Northbrook Digital LLC v. Vendio Services, Inc.,* 2008 WL 2390740, at *15 (D.Minn. 2008) (citing *Mercexchange, L.L.C.*

*v. eBay, Inc.,* 467 F.Supp.2d 608, 624-25 (E.D.Va.2006)).

Since *U.S. Steel,* the competitive decisionmaker standard, with the hardship exception, has governed protective orders against patent counsel. *See Matsushita Elec. Indus. Co. v. United States,* 929 F.2d 1577, 1578-79 (Fed.Cir.1991); *Avocent Redmond Corp.,* 242 F.R.D. at 577. In the current litigation, the parties' dispute requires consideration of both the underlying standard and the exception. *Northbrook Digital LLC v. Vendio Services, Inc.* WL 2390740, 13 -14, 625 F.Supp.2d 728  (D.Minn.,2008).  In *Northbrook Digital*, the patent owner's activities before Patent and Trademark Office (PTO) in prosecuting continuation applications related to patents that taught methods for search and retrieval of data over computer networks such as the Internet were not compatible with allowing him to review, either as attorney or as expert witness, software company's confidential technical information.  Thus, the protective order prohibiting the patent owner from viewing company's confidential technical information was warranted.

In cases specifically addressing the question of whether one party's patent prosecution lawyer should have access to an opposing party's confidential information, district courts have generally reached results on a similar case by case factual review.  But, some courts have held that a company's patent prosecutor necessarily engages in competitive decision-making, and therefore, must have limited access to an opposing party's confidential information under *U.S. Steel.* For example, in *Motorola, Inc. v. Interdigital Tech. Corp.,* No. 93-488-LON, 1994 WL 16189689 (D.Del. Dec.19, 1994), the court approved a patent prosecution provision for the reason that the defendant's litigation attorneys would later prosecute the same patents. *Id.* at *4-5 (noting that it would be necessary for those attorneys to constantly challenge the origin of every idea and that "[t]he level of introspection that would be required [was] simply too much to expect, no matter how intelligent, dedicated, or ethical the ... attorneys may be"); *see also*

*Mikohn Gaming Corp. v. Acres Gaming, Inc.,* No. CV-S-97-1383, 1998 U.S. Dist. LEXIS 22251 (D.Nev. Apr. 15, 1998) (denying a lawyer access to confidential information upon finding that there was a substantial risk that the lawyer would misuse information discovered in litigation in his role as patent prosecutor, whether deliberate or inadvertent); *Commissariat A L'Energie v. Dell Computer Corp.,* No. 03-484-KAJ, 2004 WL 1196965 (D.Del. May 25, 2004) (holding that prosecuting patent applications involves decisions regarding scope and emphasis that implicate competitive decision-making); *Presidio Components, Inc. v. American Technical Ceramics Corp.,* 546 F.Supp.2d 951 (S.D.Cal.2008) (denying lawyers access to confidential information, and emphasizing that plaintiff did not show that it would be prejudiced by receiving advice from other lawyers at the same firm and that lawyers' decisions regarding "scope and emphasis" of the products were competitive decision-making). Other courts have reached different results. In *Sibia Neurosciences, Inc. v. Cadus Pharmaceutical Corp.,* No. 96-1231-IEG, 1997 U.S. Dist. LEXIS 24130 (S.D.Cal. July 15, 1997), the district court criticized the *Motorola* case as redefining the *U.S. Steel* "competitive decision-making" analysis by expanding it to include all activities which defined the "scope and emphasis" of a client's research and development efforts. *Id.* at *26 (finding that defendant's attorney was not involved in competitive decision-making and the denial of access would cause the defendant an unnecessary hardship), *aff'd, In re Sibia Neurosciences, Inc.,* No. 525, 1997 WL 688174, 1997 U.S.App. LEXIS 31828 (Fed.Cir. Oct. 22, 1997) (unpublished); *see also Pergo, Inc. v. Faus Group, Inc.,* No. 5:05-CV-50-FL, 2005 U.S. Dist. LEXIS 40601 (E.D.N.C. Sept.20, 2005) (holding that defendants did not sufficiently demonstrate that the counsel for plaintiffs was involved in competitive decision-making under the *U.S. Steel* test); *AFP Advanced Food Prods. LLC v. Snyder's of Hanover Mfg., Inc.,* No. 05-3006, 2006 WL 47374 (E.D.Pa. Jan.6, 2006) (holding that there was no reason for the court to

believe that the AFP lawyers would not strictly follow the adopted order and refrain from using, either inadvertently or intentionally, confidential information).

**Discussion**

Here, Delphi argues that a patent prosecution provision is necessary in this case because there is an unavoidable risk that Methode's attorneys will inadvertently use Delphi's confidential information. Delphi notes that Methode's patent prosecution attorneys are currently working on reexamination proceedings at the Patent Office concerning the patents at issue in this case. Delphi believes that allowing Methode's attorneys to gain access to highly confidential information regarding Delphi's products could result in Delphi's lawyers rewriting the patent claims being litigated to specifically target Delphi's products. In response, Methode argues that the patent prosecution provision would work a substantial hardship on Methode and that Delphi has not shown good cause for its issuance.

The court finds that Delphi has met its burden of demonstrating good cause for a patent prosecution bar to be entered in this case. The *U.S. Steel* case mandates a determination of whether there is an "unacceptable opportunity for inadvertent disclosure" by considering whether Methode's patent prosecution attorneys are engaged in competitive decision-making and the hardship such a provision would cause Methode. *See U.S. Steel,* 730 F.2d at 1468. Delphi has offered evidence of competitive decision-making by Mr. Wolfe, one of the lawyers representing Methode in this case. Indeed, at the discovery hearing on an earlier motion, it appeared that Mr. Wolfe conceded that he was involved in the reexamination and/or prosecuting patent applications related to bladder based occupant sensing technologies. This would be evidence of competitive decisions made by him. In addition, Delphi supports its position with evidence of the patent prosecution attorneys' "relationship" with Methode, including that Methode's counsel

act as both patent prosecution and litigation counsel; have a more than 5-year relationship with Methode; and are currently involved in ongoing proceedings at the Patent Office regarding the patents at issue in this case. The *Motorola* line of cases have held that patent prosecution counsel are competitive decision-makers in similar instances. Whether determined on a per se basis or an individual factual analysis, there is good cause to enter the provision barring review here.

The reply brief of Delphi is helpful in explaining the issues and focuses on how disclosure of the technology to attorneys who are not only litigating this case but also prosecuting similar patents would make them "competitive decision makers" in this case. Currently, Charles Wolfe of the law firm Blank Rome is both litigation attorney and patent prosecution counsel. He is long tenured with Methode in this arena. The attorney's history and ability to shape the context of patent applications and to amend claims, including the ones at issue here, makes him especially susceptible to using, even without awareness, information provided in litigation. His activities constitute "competitive decision making" and inadvertent disclosure or use is a substantial issue.

The patent prosecution bar in Delphi's proposed order prevents the inadvertent or accidental disclosure of the information disclosed in this litigation in the context of prosecuting a patent. In addition, it protects against the inadvertent or unconscious use of such information in fashioning patents and arguments before the Patent Office. Methode's interpretation of competitive decision making is not consistent with court rulings and its order fails to have any way to monitor or prevent or discover inadvertent disclosure, particularly as one lawyer Mr. Wolfe is already involved in the patent prosecution.

However, Delphi's order fails to accord balance in making the restriction of information to attorneys involved in related patent prosecution applicable to itself. It says that it does not use the same attorneys so Methode is apparently unable to show good cause at this time. However, given the difficulty in monitoring attorney-client relationships, the court finds that the bar should be reciprocal. Thus, Par. 5 should be modified as follows:

". . except that no person for ~~the Defendant~~ any party, including attorneys. . .

**Conclusion**

Accordingly, IT IS ORDERED THAT Delphi's motion is granted in part, and the protective order as modified shall be entered. IT IS FURTHER ORDERED THAT within 14 days of the date of this order, Delphi shall file a complete and corrected Protective Order consistent with the orders herein.

No Costs to Either Side.

SO ORDERED

        s/Virginia M. Morgan
        Virginia M. Morgan
        United States Magistrate Judge

Dated: November 17, 2009

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on November 17, 2009.

        s/Jane Johnson
        Case Manager to
        Magistrate Judge Virginia M. Morgan