**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

METHODE ELECTRONICS, INC.,
    Plaintiff/Counter-Defendant,         Civil Action No. 09-CV-13078
                                                      District Judge Paul D. Borman
                                                      Magistrate Judge Virginia M. Morgan

v.

DPH-DAS LLC, f/k/a DELPHI
AUTOMOTIVE SYSTEMS LLC,
      Defendant/Counter-Plaintiff,
and

MARIAN, INC.,
      Defendant
_____/

DPH-DAS LLC, f/k/a DELPHI
AUTOMOTIVE SYSTEMS LLC,
      Plaintiff,                                      Civil Action No. 09-14303

v.

METHODE ELECTRONICS, INC.,
      Defendant.
_____/

OPINION AND ORDER
(1) AFFIRMING AND MODIFYING THE MAGISTRATE JUDGE'S NOVEMBER 17, 2009
OPINION AND ORDER GRANTING IN PART DELPHI'S MOTION FOR PROTECTIVE
ORDER AND DENYING METHODE'S MOTION FOR PROTECTIVE
ORDER (DKT. NO. 42) AND
(2) DENYING METHODE'S OBJECTIONS TO THE MAGISTRATE JUDGE'S NOVEMBER
<u>17, 2009 OPINION AND ORDER(DKT. NO. 44)</u>

      Before the Court are Plaintiff Methode Electronics, Inc.'s ("Methode") Objections to the

Magistrate Judge's November 17, 2009 Opinion and Order Granting in Part and Denying in Part

1

Delphi's Motion for Protective Order and Denying Methode's Motion for Protective Order.[1]  (Dkt. No. 44.)  This Court held a hearing on January 8, 2010.  For the reasons stated herein, the Court affirms and modifies the Magistrate Judge's November 17, 2009 Opinion and Order and denies Methode's objections to that Order.

## I.     BACKGROUND

In this patent action, Defendant DPH-DAS LLC f.k.a. Delphi Automotive Systems LLC ("DPH") and Plaintiff Methode both hold patents related to technology involving bladders in automobile car seats that detect the weight of a passenger.  Methode claims that DPH is infringing its patent and DPH responds that it is not guilty of infringement and that Methode's patent is invalid.  The parties agree that a protective order is necessary to protect the parties' confidential commercial information and intellectual property but disagree on the terms of such an order.  Specifically, the parties cannot agree on the appropriate terms of the provision of the protective order which restricts access to Attorneys Eye Only ("AEO") information by litigation counsel who are also patent prosecution counsel.

The essence of the dispute is whether Mr. Wolfe, who serves as both litigation and patent prosecution counsel for Methode, or someone acting in his same capacity, should be considered a "competitive decisionmaker" and therefore should be barred from prosecuting patents and at the

---

[1] As a result of a clerical error, this Court entered a Protective Order submitted by Defendant DPH-DAS LLC ("DPH") on December 1, 2009 (Dkt. No. 47), which incorporated terms as ordered in the Magistrate Judge's November 17, 2009 Opinion and Order.  When this Court entered its December 1, 2009 Order, it was under the mistaken belief that no timely objections to the Magistrate Judge's Opinion and Order had been filed.  On January 4, 2010, the Court entered an Order setting aside its December 1, 2009 Protective Order and setting a hearing for January 8, 2010 on Methode's timely-filed objections to the Magistrate Judge's November 17, 2009 Opinion and Order, which the Court now addresses in this Opinion and Order.

same time participating in litigation involving the same or similar patents and/or technology.[2] The principal paragraph at issue, as proposed by DPH, provides:

> 5. Access to Confidential-Attorneys Only Information. Access to information designated as 'ATTORNEYS EYES ONLY' shall be limited to, and only to, those persons listed in paragraphs 4(a) through 4(c) and 4(e) through 4(g), except that no person for *the defendant*, including attorneys, who participates in, aides in, advises or counsels concerning the preparation, filing and/or prosecution of patent applications in any country, including any interference, reissue, reexamination or other proceeding, relating to occupant sensing technologies and/or the subject matter of U.S. Patent Nos. 5, 975, 568, 7, 237, 443, Des 409, 935 and/or related patents and patent applications shall be permitted access to documents marked "ATTORNEYS EYES ONLY." Further, persons described in paragraph 4(d) shall not be given access to documents marked "ATTORNEYS EYES ONLY. (Emphasis added).

On November 17, 2009, the Magistrate Judge entered an Opinion and Order which adopted this language, deleting the italicized words "the defendant" and substituting the words "any party," thereby making the provisions of this paragraph applicable to both Methode and DPH. (Dkt. No. 42.)

Methode objects to the Magistrate Judge's November 17, 2009 Opinion and Order arguing that the Opinion and Order is clearly erroneous and contrary to applicable law because: (1) "it fails to apply the 'competitive business decisionmaker test' to all parties equally and because the patent prosecution bar adopted by the Court does not comport with the 'competitive business decisionmaker' test established by the Federal Circuit for use in patent cases"; and (2) "it failed to

---

[2] At the January 8, 2010 hearing, which Mr. Wolfe attended, counsel for Delphi and Methode confirmed that Mr. Wolfe is the sole attorney whose access to AEO materials is currently at issue. (Transcript of Oral Argument, January 8, 2010, *Methode Elec., Inc. v. Delphi and Marian*, No. 09-13078 consolidated with *Delphi Automotive Sys. LLC. V. Methode Elec., Inc.,* No. 09-14303, 17:9-14. Hereinafter cited as "Tr. --."

adopt a protective order that implemented reciprocal restrictions on the parties' selection of consultants and experts under the Federal Circuit's competitive decisionmaking test." (Methode Br. Support Obj., Dkt. No. 45, p. iii.)[3]

## II.   ANALYSIS

The Court finds that the Magistrate Judge's November 17, 2009 Opinion and Order was not clearly erroneous or contrary to applicable law and that the Magistrate Judge correctly applied the "competitive business decisionmaker test" to the facts of this case, in adopting in part DPH's proposed protective order and denying Methode's motion for a protective order. The Court, however, modifies the Magistrate Judge's November 17, 2009 Opinion and Order to clarify the parameters of that Opinion and Order relating to paragraph 5 of DPH's proposed protective order, and provides the necessary discussion of the "harm" factor insofar as it applied to Methode under this Order.

### 1.   The Competitive Decisionmaker Test

The competitive decisionmaker test was first articulated by the Federal Circuit in *Untied States Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984). Discussing the "problem and importance of avoiding inadvertent disclosure" of a party's highly confidential material in the course of litigation, the court refused to draw a bright line distinction between in-house and retained counsel, and cautioned that determining whether there was an "unacceptable opportunity for inadvertent disclosure" was a case-by-case, fact-specific task. (*Id.* at 1468). The court then acknowledged that the "competitive decisionmaking" inquiry could be a meaningful basis for

---

[3] The parties agreed, at the January 8, 2010 hearing, to engage in further efforts to resolve among themselves the issues surrounding the second objection relating to experts. (Tr. 40:2-9.) This Opinion, therefore, addresses only the first of Methode's objections.

determining whether or not access to highly confidential material should be granted:

> The parties have referred to involvement in "competitive decisionmaking" as a basis for denial of access. The phrase would appear serviceable as shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.

730 F.2d at 1468 n.3. This test has been employed, with widely varying results, in the context of patent litigation, to determine whether or not a court should adopt a protective order that restricts an accused infringer's litigation counsel access to certain confidential information, i.e. a "patent prosecution bar."

Methode argues that the unpublished decision of the Federal Circuit in *In Re Sibia Neurosciences, Inc.*, 1997 U.S. App. LEXIS 31828 (Fed. Cir. Oct. 22, 2997), is "controlling authority," and that the Magistrate Judge failed to follow this decision in her Opinion and Order. The court in *In Re Sibia* cautioned that denying access to a party's outside counsel solely on the ground that such counsel also prosecute patents is "the type of generalization counseled against in *U.S. Steel*. The facts, not the category, must inform the result." *Id*. at * 6. The court refused to issue a writ of mandamus directing the district court to vacate its order which allowed access to all of defendant's outside counsel. *Id*. at * 4. The court found it "significant" that the attorney to whom access was denied, who admitted that he was involved in prosecuting patents for defendant in the area involved in the underlying action, "stated that he was not involved in 'competitive decisionmaking.'" Although no findings had been made in the district court as to the attorney's involvement in pricing or product design, the court relied on the district court's holding that "none of the indicia of 'competitive decisionmaking' [were] present [there]." *Id*. at * 7-8.

Other courts have relied on *In Re Sibia*, some requiring evidence of involvement specifically

with "pricing or product design,"in refusing to find that patent prosecution counsel are competitive decisionmakers. *Cf. Avocent Redmond Corp. v. United States*, 85 Fed. Cl. 640, 645 (Fed. Cl. 2009) (holding that patent prosecution attorneys currently working on reexamination proceedings concerning three of the four patents at issue were not competitive decisionmakers); *Greenstreak Grp., Inc. v. P.N.A. Construction Technologies, Inc.*, 251 F.R.D. 390 (E.D. Mo. 2008) (finding the absence of evidence as to outside counsel's involvement in pricing and product design persuasive on the absence of competitive decisionmaking); *Pergo, Inc. v. Faus Grp., Inc*., No. 5:05-CV-FL(1), 2005 U.S. Dist. LEXIS 40601 (E.D.N.C. September 20, 2005) (where counsel in question was not involved with patents relevant to the subject matter of the case and never advised on matters of product pricing, design, invention, research or development or product marketing and/or sales, counsel was not a competitive decisionmaker); *Island Intellectual Prop. LLC v. Promontory Interfinancial Network*., LLC, No. 09-cv-2675, 2009 WL 3026831 (S.D.N.Y. Nov. 18, 2009) (cautioning against a prohibitive *per se* ban on the use of litigation counsel who also prosecute patents).

However, as DPH argues and as the Magistrate Judge concluded, there are numerous cases which reject such a strict reading of the *In Re Sibia* decision. These cases hold, often relying on the reasoning of the court in *Motorola v. Interdigital Technology Corp*., No. 93-488-LON, 1994 WL 16189689 (D. Del. Dec. 19, 1994), that in certain circumstances, patent prosecution can rise to the level of "competitive decisionmaking." In *Motorola*, the court upheld a protective order provision that prevented attorneys who received confidential information from prosecuting patents on behalf of the defendant during the pendency of the case and for one year after the conclusion of the litigation, including appeals. *Id*. at * 3. Noting that the attorneys in question were "prosecuting

6

patents that are directly at issue in the present litigation," the court found that the threat of inadvertent disclosure was humanly insurmountable:

> DS&M is currently prosecuting applications relating to the very patents at issue in this litigation. Attorneys who were to view Motorola's voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped "untainted", another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the DS&M attorneys may be.

*Id*. at * 5. The court was persuaded by Motorola's argument that patent prosecution presented the opportunity for opposing counsel to "make the claims read on new products and new directions where [the competitor] project[s] sales to be most critical. And [to] forget about the ones that relate to products that are going to die." *Id*. at * 4. The court concluded: "Accepting that [plaintiff's president] is a man of great moral fiber, we nonetheless question his human ability during future years of research to separate the application he extrapolated from [defendant's] documents from those he develops from his own ideas." *Id*. (Internal quotation marks and citations omitted).

Many courts have relied on the *Motorola* reasoning to uphold prosecution bars, or alternatively, as the Magistrate Judge's order does here, to deny counsel prosecuting patents access to confidential information produced in litigation. *Cf. Presidio Components, Inc. v. Amer. Technical Ceramics Corp.*, 546 F. Supp. 2d 951, 958 (S.D. Cal. 2008) (recognizing both the *In Re Sibia* and *Motorola* lines of cases and denying Presidio's patent prosecution counsel access to AEO information where counsel would be making "decisions involving scope and emphasis, such as drafting claims to read on new products and new directions 'where [a party] projects sales to be more critical'", and distinguishing *Sibia* as having been decided before the significant post-*Motorola* line of cases); *Phoenix Solutions Inc. v. Wells Fargo Bank, N.A. et al.*, 254 F.R.D. 568, 580 n. 3

(N.D. Cal. 2008) (denying patent counsel involved in prosecuting "patents-in-suit" access to highly confidential material, refusing to consider the unpublished decision in *In Re Sibia* and finding counsel's contention that *In Re Sibia* was controlling to be improper); *Northbrook Digital, LLC v. Vendio Services, Inc.*, 625 F. Supp. 2d 728, 759-760 (D. Minn. 2008) (noting that competitive decisionmaking is much more likely to be implicated "where there is a relationship between the prosecution and the patents-in-suit"); *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, No. 03-484-KAJ, 2004 WL 1196965 at * 3 (D. Del. May 25, 2004) (holding that where CEA's patent attorneys were prosecuting patents in the field of technology involved in the litigation, they must be barred from having access to Dell's highly confidential information or be prohibited from prosecuting patents in that field of technology for one year following conclusion of the litigation); *In Re Papst Licensing*, No. MDL 1278, 2000 WL 554219 at * 3 (E.D. La. 2000) (recognizing that "[s]everal district courts have determined that competitive decisionmaking also includes advice and participation in prosecuting patent applications related to the patents in suit" and ordering a restriction on counsel who access confidential information from prosecuting patents related to the subject matter of the patents at issue in the litigation during the pendency of the case and for one year after conclusion of the litigation); *Mikohn Gaming Corp. v. Acres Gaming Inc.*, No. CV-S-97-1383, 50 U.S.P.Q.2d 1783, 1785 (D. Nev. April 15, 1998) (finding *Motorola* persuasive where the challenged law firm was prosecuting patents related to the very patents in suit).

  **2.**  **The Magistrate Judge's Application of the Competitive Decisionmaker Test**

In its brief in response to Methode's motion for a protective order, DPH set forth the facts that it contends bring Methode's outside counsel, Charles Wolfe, within the definition of a competitive decisionmaker in this case: "[I]t is not merely the fact that Methode's chosen litigation

counsel prosecutes patents generally that makes them 'competitive decisionmakers,' but rather, it is their active role and long tenure in specifically shaping Methode's bladder-based occupant detection technology patents, and the fact that such shaping can be applied to currently pending patent applications, that brings them within the scope of a 'competitive decision maker' in this case." (DPH Br. Resp. Mot. Protec. Order, Dkt. No. 33 p. 7.)  Mr. Wolfe confirmed, at this Court's January 8, 2010 hearing, that he is currently involved (although he has temporarily recused himself pending this Court's decision on the challenged protective order) in an ongoing patent continuation proceeding involving the very patents, the very technology, at issue in this case.  (Tr. 39:12-22.)

At the January 8, 2010 hearing, counsel for DPH elaborated further on why Mr. Wolfe's patent prosecution activities bring him within the definition of a competitive decisionmaker for Methode:

> THE COURT: So what does Mr. Wolfe do, do you believe, puts him into the competitive decisionmaking box?
>
> *          *          *
>
> MR. SHIFLEY: He does not have an in-house counsel or an in-house patent counsel to whom he relates.  He is patent counsel especially in this matter of a continuation application that now protects a non – or a defunct business.  So it's not really protecting anything for Methode, but is there – it must be there for a purpose.  Its purpose at this point can only be to wait for a look at what Delphi is about to do.  And he is then the patent counsel.  And it is a fact that the things we patent lawyers do are so different that sometimes we don't speak the same language.  He speaks the language of patent claims.  He will recommend them to the client who, in all likelihood, will express if it's right with you, it's right with me because I don't speak your language.  It is the relationship of patent lawyers to their clients where they don't have in-house patent counsel to relate to this, and this Methode does not.  So he is truly four square right there in the drafting of claims, making the decision about what the claims will be because the review that will occur is so limited.  And that is how he's the competitive decisionmaker.  It will be something as to his advice in the participation in that client's decisions made in light of similar or corresponding information about a competitor.

9

*          *          *

>   THE COURT: What is your fear? Tell me what your fear is. I mean I think I understand. He's going to get the information, use it on his other side of the street matter.
>
>   MR. SHIFLEY: Yes. That's exactly it, that he will write patent application claims that he wouldn't otherwise write and get patent rights for this company that is in this high stakes dispute with Delphi and DPH and Marian and he will get property rights in the Patent Office that he wouldn't have otherwise gotten and that will cause complications, potentially another lawsuit in the future and further infringement, that wouldn't have otherwise existed. To some extent, there's almost no reason for this continuation to exist. You know again, they're not in the business, so why they're pursuing this, I can only believe, is because we exist and have stopped their supply. But, otherwise, we already have a patent. So what they're about is clearly getting a different patent, different claims, something of another scope. And they can do that because this is not like a re-examination. They can pursue different claims, claims of a kind they didn't pursue the first time around. In fact, my understanding is that that's what the claims are that are being sought right now. They are different claims. They have a different scope. They go in a different direction. And the one application is not the only possible application because continuations can be filed on continuations. So we could shortly see a flurry of applications, all of which would be directed to some other facet of this situation, and we'd have not this patent that we are Defendant to but we'd have a future in which we could potentially be the Defendant to many different patents, creating a thickening problem for us. We shouldn't have that.

(Tr. 24:18-25:17; 28:20-29:24.)

In the November 17, 2009 Opinion and Order, the Magistrate Judge acknowledged the nature of Mr. Wolfe's patent prosecution activities as they relate to the patents-in-suit, and the potential that his position creates for competitive harm to DPH:

>   The reply brief of Delphi is helpful in explaining the issues and focuses on how disclosure of the technology to attorneys who are not only litigating this case but also prosecuting similar patents would make them 'competitive decision makers' in this case. Currently, Charles Wolfe of the law firm Blank Rome is both litigation attorney and patent prosecution counsel. He is long tenured with Methode in this arena. The attorney's history and ability to shape the context of patent applications and to amend claims, including the ones at issue here, makes him especially susceptible to using, even without awareness, information provided in the litigation.

10

> His activities constitute 'competitive decision making' and inadvertent disclosure or use is a substantial issue.

(Opinion and Order, Dkt. No. 42 p. 7.) The Magistrate Judge acknowledged and followed the mandate of *US Steel, supra* and was on solid ground in considering the reasoning of the courts in *Motorola, Presidio, Phoenix, Northbrook Digital, Commissariat, In Re Papst* and *Mikohn*, *supra* in concluding that Mr. Wolfe is a competitive business decisionmaker under the facts of this case. Mr. Wolfe confirmed to this Court at the January 8, 2010, that he currently is involved in a patent continuation proceeding relating to the very patents at issue in this lawsuit. Mr. Wolfe's ability to apply DPH's AEO information that he may learn through his participation in this lawsuit to shape the claims in those continuation proceedings, and to make the claims "read on" new products, brings him squarely within the concept of a "competitive business decisionmaker" as that term was defined by the court in *US Steel*. This Court agrees with the discussion in *Mikohn, supra*:

> As applied to the present case, the court finds *Motorola* persuasive. [Defense counsel] is prosecuting patent applications that are not merely related to the patents in suit, they are part of the very core of this suit. . . . Hence, in light of the claims made in this lawsuit, the advice rendered by [defense counsel] is intensely competitive.

50 U.S.P.Q.2d at 1785. *See also In re Papst, supra,* 2000 WL 554219 at * 4 ("[I]t is clear that the advice and participation of the Papst parties' counsel in the preparation and prosecution of patent applications related to the patents in suit is an intensely competitive decisionmaking activity and would be informed by access to non-Papst parties' confidential information. Counsel's ability to file new claims in existing and pending patents based on the confidential information discovered during the course of the litigation poses an unacceptable opportunity for inadvertent disclosure and misuse.").

At the January 8, 2010 hearing on Methode's objections, counsel for Methode sought to

11

convince the Court that Mr. Wolfe would be able to "compartmentalize" such information and abide by his ethical duty not to utilize such information in his patent prosecution activities. Counsel's argument, however, ignores the very essence of the court's holding in *US Steel*, i.e. the risk of inadvertent disclosure, despite counsel's best ethical intentions: "Inadvertence, like the thief-in-the-night, is no respecter of its victims. Inadvertent or accidental disclosure may or may not be predictable. To the extent that it may be predicted, and cannot be adequately forestalled in the design of a protective order, it may be a factor in the access decision." *US Steel, supra* at 1468. *US Steel* instructs that inadvertent disclosure of sensitive information is a palpable risk and this Court concludes that the Magistrate Judge correctly decided that the opportunity for such disclosure by Mr. Wolfe in this case justifies denying him access to DPH's AEO information.

Methode also objects that the restriction on access to AEO information adopted by the Magistrate Judge in paragraph 5 of DPH's proposed protective order erroneously fails to include a limitation on the length of time for which Mr. Wolfe might be prohibited from returning to his patent prosecution activities in the event that he does gain access to DPH's AEO information. The Court agrees that paragraph 5 is unclear on what options Mr. Wolfe might have in the event that he opts to cease his patent prosecution activities and participate as litigation counsel with full access to DPH's AEO information. Accordingly, the Court adopts DPH's proposed order, as modified by the Magistrate in the November 17, 2009 Opinion and Order, and adds the following language to clarify the intent of paragraph 5:

> During the pendency of this litigation, and for one year after the full and final conclusion of this litigation, including all appeals, attorneys who are provided access to ATTORNEYS EYES ONLY Information shall not draft, file or prosecute, or advise or counsel or assist in any way in the preparation, drafting, filing or prosecuting, of any patent applications, including amendments thereto, including but not limited

> to new, continuation, divisional or continuation-in-part applications, before any United States or foreign agency, for any products related to the subject matter described by or claimed in U.S. Patent Nos. 5,975, 568, 7,237, 443 Des 409,935 and/or related patents and patent applications.

The Court concludes that this language gives Methode the choice of denying Mr. Wolfe access to AEO information, which would allow him to continue his patent prosecution activities, or alternatively allowing Mr. Wolfe access to AEO information, and restrict his future patent prosecution activities accordingly. *See Commissiariat, supra* at * 3 (adopting a similar provision which "strikes the proper balance between 'the goals of full disclosure of relevant information and reasonable protection against economic injury' that are implicated in patent infringement cases generally, and certainly in this case.") (citations omitted). The Court notes, further, that the district judge in *Motorola* also adopted a one-year ban on patent prosecution. "This remedy is broad enough to protect Motorola's confidential information yet seeks to minimize the hardship to both ITC and DS&M." 1994 WL 16189689 at 6. *See also In re Papst, supra* at * 4 (adopting a one year patent prosecution ban). This Court follows that course and that reasoning.

Methode also argues that the Magistrate Judge erroneously failed to consider the hardship to Methode if Mr. Wolfe is barred from accessing AEO information and simultaneously continuing to prosecute the patents in suit. This Court finds that while the Magistrate Judge alluded to the mandate of *US Steel* that hardship to the party denied access must be considered, her opinion failed to articulate findings on the issue of hardship. Accordingly, this Court invited counsel for both parties to fully discuss the hardship issue at the January 8, 2010 hearing, heard their arguments, and will proceed to discuss and decide this issue, rather than remand this issue to the Magistrate Judge for further proceedings.

This Court concludes that any hardship to Methode that may flow from restricting Mr. Wolfe's access to the AEO material or alternatively, at Methode's option, from restricting his ability to participate in patent prosecution activities during this litigation and for one year beyond its conclusion if he chooses to access AEO information, does not outweigh the potential for competitive harm to DPH if Mr. Wolfe were permitted to access DPH's AEO Information while continuing to prosecute patents related to the very patents at issue in this lawsuit.  Counsel for DPH represented to the Court at the January 8, 2010 hearing, and counsel for Methode did not disagree, that Mr. Wolfe is not the only patent lawyer familiar with the patents at issue in this lawsuit and that in fact Mr. Wolfe did not originally gain the patents in suit on behalf of Methode and his history does not date back to the origins of the patents in suit:

> MR. SHIFLEY: Again, [Mr. Wolfe is] not the only patent lawyer that Methode has. True he says these are other technologies where other firms are involved.  He's not the only patent lawyer Methode has ever involved in this technology because he didn't get the patent in suit.  He's not the only lawyer involved because he hasn't signed for everything and done everything.   He has, in fact, had another lawyer of his firm sign and acting. So in his specific situation the hardship is not very much. It's one application. It's one lawyer who doesn't have a history back to the origins of this matter.

(Tr. 35:2-11.)

Thus, while it appears that Mr.Wolfe is currently, and has been for some time, Methode's main prosecution counsel on the technology at issue in this case, it does not appear that he is singularly informed on the patents at issue.  Moreover, it appears that the current continuation proceeding related to the patents in suit in which Mr. Wolfe seeks continued involvement are in a very inactive stage and relate to patents on products that Methode does not currently manufacture. Conversely, it seems apparent that if Mr. Wolfe were to obtain DPH's AEO information relating to the patents in suit, he could do great competitive harm to DPH if he were given the opportunity to

14

apply this knowledge, even inadvertently, to the claims currently under prosecution.

### III.   CONCLUSION

Accordingly, this Court (1) affirms and modifies the Magistrate Judge's November 17, 2009 Opinion and Order Granting in Part Delphi's Motion for Protective Order and Denying Methode's Motion for Protective Order and (2) denies Methode's Objections to the Magistrate Judge's November 17, 2009 Order. That Protective Order will apply with respect to Charles Wolfe, Esq., during and for 1 year after the final conclusion of the instant lawsuit, including all appeals.


IT IS SO ORDERED.

                                    s/Paul D. Borman  
                                    PAUL D. BORMAN  
                                    UNITED STATES DISTRICT JUDGE

Dated: January 19, 2010

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 19, 2010.


                                    s/Denise Goodine  
                                    Case Manager